**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                    Date:  October 31, 2025

Title: Saul Panuelas Gutierrez v. Kristi Noem et al

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Karlen Dubon                                         Not Present
Courtroom Clerk                                     Court Reporter

ATTORNEYS PRESENT FOR                    ATTORNEYS PRESENT FOR
PLAINTIFF:                                              DEFENDANTS:
None Present                                           None Present

PROCEEDINGS (IN CHAMBERS):  **ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [4]**

Before the Court is Petitioner Saul Panuelas Gutierrez's ("Plaintiff") Ex Parte Application for a Temporary Restraining Order ("Motion") (Dkt. 4). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.  Having considered the arguments, the Court **GRANTS** the Motion.

I.      **BACKGROUND**

        A.      **Facts**

Petitioner does not have lawful status in the United States; he originally came to the United States from Mexico in 1987 at the age of 12. Mot. at 1. Petitioner grew up in San Clemente, California, and has family members and community in Orange County, California. *Id.* Around the age of 14, Petitioner joined the San Clemente Varrio Chico Gang for protection from bullying. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                          Date: October 31, 2025

Page 2

On October 15, 1993, when he was 17, Petitioner went to a local San Clemente beach with friends. *Id.* at 1-2. At the beach Petitioner and his friends got into a fight with several other youths who were approaching them in trucks. *Id.* at 2. Petitioner and his friends hurled several nearby objects at the trucks in an apparent effort to defend themselves. *Id.* Petitioner threw a "rock the size of a golf ball" at the top of one of the trucks. *Id.* One of the objects thrown went through the window and hit a 17-year-old boy in the head. *Id.* The 17-year-old would end up dying from this wound. *Id.* It does not appear that the object thrown by Petitioner is what injured (or killed) the victim. *See* Declaration of Stacy Tolchin ("Tolchin Decl.") (Dkt. 4-1), Exs. J-K.

Petitioner and his friends were arrested and charged with second degree murder, seven counts of assault, and gang enhancements. Mot. at 2. Petitioner was charged as an adult. *Id.* Petitioner was sentenced to fifteen years to life in prison and was placed in prison where he joined the Sureños gang because he believed that he had to join the or else he would be severely harmed or killed. *Id.*

Petitioner went on to participate in riots and fights on behalf of the gang and was in prison for nearly thirty years. *Id.* After hearing testimony from the victim's family at his parole hearing in 2015, Petitioner allegedly decided to rethink his decisions and associations. *Id.* Accordingly, he began to distance himself from the gang and chose to work in the prison instead of participating in gang activities. *Id.* Because of this, the Sureños gang threatened to kill Petitioner and beat him. *Id.* Petitioner then began actively to inform prison officials of the activities of the Sureños gang and its leadership. *Id.* Petitioner disassociated with the gang and was moved to a general population cell. *Id.*

In 2022, Petitioner's murder conviction was vacated, and the crime was reduced to assault with force likely to produce great bodily injury. Tolchin Decl., Ex. J. He was resentenced to 18 years in prison, receiving credit for time served. Mot. at 3. It appears that under current California criminal statutes Petitioner would not have received as harsh a sentence as he did back in the 1990's. *See* Tolchin Decl., Exs. J-K. Petitioner was released from prison in 2022 and immediately transferred to immigration custody. *Id.* at 3. On May 5, 2022, Petitioner was detained by immigration authorities and was issued an administrative order of removal by DHS pursuant to 8 U.S.C. § 1228(b). *Id.* Petitioner expressed a reasonable fear of return to Mexico—because of his gang history—and was placed into "withholding only" proceedings before an immigration judge, while still detained. *Id.* On November 10, 2022, Petitioner was ordered released on a $5,000 bond and Alternatives to Detention by the immigration judge, after having been in custody for

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                    Date: October 31, 2025

Page 3

more than six months. *Id.* As a part of the terms of release, he reported regularly to ICE on an Order of Supervision. *Id.*

On March 6, 2023, an immigration judge granted Petitioner deferral of removal under Article III of the Convention Against Torture based on his risk of torture from gangs in Mexico. *Id.* DHS did not appeal the decision. *Id.*

Petitioner continued to report as required under the terms of his order of supervision. *Id.* When Petitioner went to report to the San Bernardino ICE Field Office on October 9, 2025 he was taken into immigration custody and was told the government is now deporting people to alternative third countries. *Id.* at 2-3.

### B.      Procedural History

On October 9, 2025 Petitioner filed his Petition (Dkt. 1) and the instant Motion (Dkt. 4). Respondents filed their Opposition ("Opp'n") (Dkt. 6) on October 10, 2025. Petitioner filed his Reply on October 12, 2025 (Dkt. 7).

On October 17, 2025 the Court issued, without oral argument, an Order Denying Petitioner's Motion (the "Prior Order") (Dkt. 8). The Court then vacated its Prior Order on October 20, 2025 because it "concluded that it needs more information regarding the nature of the relief requested and factual basis for Petitioner's Application for a Temporary Restraining Order" (Dkt. 10). The Court also determined oral argument was necessary to adjudicate the Motion and held oral argument on October 23, 2025 (Dkt. 13). After oral argument the Parties submitted, at the request of the Court, a compilation of other cases within the Ninth Circuit dealing with similar due process and third country removal issues (Dkts. 14, 15).

## II.      LEGAL STANDARD

Courts have recognized very few circumstances justifying the issuance of an ex parte temporary restraining order. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). A plaintiff seeking preliminary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *see Winter v. Nat. Res. Def. Council, Inc.*,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                           Date: October 31, 2025

Page 4

555 U.S. 7, 22 (2008). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits*." Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

**III.    DISCUSSION**

Petitioner seeks a temporary restraining order: (1) ordering his release from custody; (2) enjoining Respondents from transferring Petitioner outside of this judicial district; and (3) enjoining Respondents from removing Petitioner to a third country absent notice and an opportunity for him to apply for protection under the Convention Against Torture. Mot. at 11-12. Having reviewed the authority provided by the Parties and having heard oral argument, the Court **GRANTS** Petitioner's request to be released from custody. As such, the Court **REVERSES** its Prior Order (Dkt. 8). Because the Court grants Petitioner release from custody, it does not reach whether Respondents should be enjoined from transferring Petitioner outside this judicial district or the third country removal issue.

### A.    Likelihood Of Success On The Merits.

Petitioner argues that his detention is unlawful because he has been detained for longer than six months and his release from custody has not been validly revoked. Mot. at 4-8. Petitioner argues that he is likely to succeed on the merits of his claims because Respondents cannot demonstrate that his removal is reasonably foreseeable. *Id.* at 5-6. Petitioner further argues that Respondents present no evidence of changed circumstances to justify re-detention. *Id.* at 6-7. And finally, Petitioner argues that Respondents did not follow the due process procedure in the applicable federal regulations when they revoked his release. *Id.* at 7-8. Respondents respond that Petitioner has failed to show he has been (or will be) detained for an indefinite time. Opp'n at 3-4. Respondents further respond they have discretion under the applicable regulations to detain individuals when they see fit. *Id.* at 4-6.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                          Date: October 31, 2025

Page 5

noncitizens present in the United States, including those subject to final removal orders. *Zadyvadas v. Davis*, 533 U.S. 678, 693-94 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent. Indeed, this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." (cleaned up)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Title 8, United States Code, Section 1231 governs the detention and removal of noncitizens who have been ordered removed. This statute directs the Attorney General to remove the noncitizen "within a period of 90 days" and authorizes detention during this removal period. 8 U.S.C. § 1231(a). However, if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

If released, an alien subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The revocation of release is governed by 8 C.F.R. §§ 241.13(i)(3) and 241.4(l), which require that "upon revocation" the alien "be notified of the reasons for revocation of his or her release" and given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l); *see Constantinovici v. Bondi*, 2025 WL 2898985, at *4-5 (S.D. Cal. Oct. 10, 2025). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 'were intended to 'provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release'" *Constantinovici*, 2025 WL 2898985, at *5 (cleaned up) (quoting *Santamaria Orellano v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

The court finds the record before the court is sufficient to show that Petitioner is likely to succeed on the merits of his claims for failure to comply with C.F.R. §§ 241.13(i)(3) and 241.4(l). See *Winter*, 555 U.S. at 20. "It is well-established that government agencies are required to follow their own regulations." *Constantinovici*, 2025 WL 2898985, at *6 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                    Date: October 31, 2025

Page 6

known maxim that agencies must comply with their own regulations."). "Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" *Constantinovici*, 2025 WL 2898985, at *6 (quoting *Rokhfirooz v. Larose*, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025)) (collecting cases). Here, all petitioner was told at the time of his re-detention was that he was being re-detained because of his "prior criminal history," that the government is now removing people to alternative third countries , and that Petitioner would likely be in custody for a "very long time." Tolchin Decl., Ex. A ¶¶ 6-7. Critically, Respondents do not dispute Petitioner's evidence other than by offering an unsupported statement that Petitioner's removal "process has just begun." Opp'n at 3. As such, Respondents fail to provide any evidence disputing their failure to comply with the applicable federal regulations. The court finds that Petitioner demonstrates he is likely to succeed on the merits of his claims under these regulations. *See Winter*, 555 U.S. at 20.

The court finds Petitioner has also shown a likelihood of success on his claim for violation of Section 241.13. *See Winter*, 555 U.S. at 20. Section 241.13 provides "special review procedures" where, among other conditions, a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). This regulation applies where ICE has made "a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1). Once that determination has been made, the noncitizen is released subject to certain conditions. See 8 C.F.R. § 241.13(h). ICE may revoke that release upon a violation of conditions of release or if "changed circumstances" have led to a determination "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2); *see also Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."). Section 241.13(i) appears applicable here as Petitioner had a final order of removal, the removal period expired, he was not removed, and he was released pursuant to an Order of Supervision. Again, Respondents have not presented any evidence or legal authority suggesting otherwise. *See generally* Opp'n. Accordingly, the court finds Respondents were required to comply with 8 C.F.R. § 241.13(i)(1), (2) in revoking Petitioner's release.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                    Date: October 31, 2025

Here, Petitioner claims he has complied with his Order of Supervision and that there have been no violations. Respondents provide no evidence to the contrary. *See generally* Opp'n. Because there appears to be no dispute that Petitioner did not violate the conditions of release, Respondents have the burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable future and have not done so. *Sun v. Noem,* 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) ("ICE's own regulations . . . place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (similar); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 n.2 (D. Mass. 2025) (similar). In particular, the absence of any travel documents suggests that Petitioner was not going to be imminently removed. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" and "does not make it significantly likely he will be removed in the foreseeable future."). Accordingly, the court finds that Petitioner demonstrates he is likely to succeed on the merits of his claim under Section 241.13. *See Winter*, 555 U.S. at 20.

### B.    Irreparable Injury

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Indeed, "unlawful detention certainly constitutes extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has shown evidence that he has been deprived of due process regarding his detention, so this factor tilts in his favor.

### C.    Balance of Equities and Public Interest

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *see California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                    Date: October 31, 2025

Page 8

("When the government is a party, the last two factors merge."). And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up). Indeed, "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) (explaining that when a party shows a likelihood of success on the merits of a constitutional claim, "the remaining *Winter* factors favor enjoining the likely unconstitutional law").

Here, Petitioner has demonstrated a likelihood of success on the merits so the third and fourth factors also tilt in his favor.

### D.      Bond Requirement

Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

### IV.      CONCLUSION

To be clear this Order does not provide Petitioner with blanket immunity from future removal, but any future enforcement actions after release must comply with the required procedures. Petitioner's removal may be proper, but that does not eliminate the need for the government to follow its own procedures.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02668-DOC-RAO                Date: October 31, 2025

Page 9

For the above reasons, the Court **GRANTS** Petitioner's Request for a Temporary Restraining Order. Respondents are **ORDERED** to release Petitioner from custody on or before November 7, 2025, at 1:00 p.m. Pacific Standard Time. This TRO will expire on November 13, 2025. A preliminary injunction hearing is set for November 13, 2025, at 10:00 a.m. Should the parties wish to submit additional briefing, Petitioner must file any opening brief and related submissions no later than November 5, 2025, and Respondents must file any opposing brief no later than November 10, 2025. Petitioner may file a reply brief by November 12, 2025.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                Initials of Deputy Clerk:
                                                                    kdu
CIVIL-GEN